Jerry Roscoe YORK and Louise York,
his wife, Petitioners,

v.

Charles E. HALLEY and Stewart M. Hunter,
in their capacities as Judge of the Juvenile
Division of the District Court of the Sev-
enth Judicial District, Respondents.

No. 48329.

Supreme Court of Oklahoma.
April 8, 1975.

James H. Hiatt, Oklahoma City, for petitioners.

Mike Tullius, Oklahoma City, for respondents.

HODGES, Vice Chief Justice.

This is an application for extraordinary relief against the respondent Judges of the Juvenile Division of the District Court of Oklahoma County, by mandamus. The issue presented is whether Jerry Roscoe York and Linda Louise York (parents) were denied due process when the respondent judge refused to hold an adversary hearing to test the allegations of a petition seeking temporary custody of their two minor children.

The children were removed from their home based on an ex parte order executed under the authority of the Juvenile Code and Juvenile Court. The order was entered pursuant to a petition filed March 10, 1975, by the brother of Jerry York which alleged that the children were dependent and neglected, suffered from malnutrition, and in need of immediate medical treatment. These facts, if true, constituted an emergency situation under 10 O.S.1971, § 1104(b). This statute permitted the court to sign an ex parte order placing temporary custody of the children with Elvin York.

The hearing on the petition was set for May 6, 1975. No adjudication that the children are dependent and neglected has been made, nor has there been any evidence presented concerning the truth of the allegations of the petition and application for temporary custody. The whole series of events was set in motion by the filing of a verified petition by Elvin York, and approved by intake worker employed by the Juvenile court, culminating in the signing of the ex parte order by the judge.

The parents requested a show cause or evidentiary hearing to determine the merits of the application for temporary custody. The request was denied by the Judge. He offered to hold an informal shelter hearing. It is uncontroverted and in fact admitted, by the Judge of the Juvenile Court that the parents would have no right to file any pleadings or affidavits, or to present any witnesses at this hearing. A shelter hearing is merely a judicial review of what an intake worker has done. Basically it is only a ministerial review of the legality of the petition filed in the case, and·no effort is made to determine its truthfulness.

The reason given for the denial of the parents' request for a hearing on the issue of temporary custody was that as a practical matter time is not available to hold show cause hearings whenever a temporary order is issued because the dockets are already overcrowded.

It is conceded by the parents that the court had the authority to enter the ex parte order under 10 O.S.1971, § 1104(b). The parents assert, however, that to remove their children from their home and custody for a period of two months without a meaningful hearing in which they might present testimony and evidence to support their position that the allegations in the petition are untrue and that the order was issued improvidently is unconstitutional and a denial of due process. We agree.

■ The fundamental requisite of due process is the opportunity to be heard. Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). The United States Supreme Court held in Bell

v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90, 96 (1971):

"The hearing required by the Due Process Clause must be 'meaningful,' Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), and 'appropriate to the nature of the case.' Mullane v. Central Hanover Bank & Trust Co., supra, 339 U.S. [306], at 313, 70 S.Ct. [652], at 657 [94 L.Ed. 865 at 872, 873]. * * *"

These requisites are all the more important when the judicial procedure concerns the continuance of the parent-child relationship. It is a premise which scarcely seems to need explanation that a shelter hearing such as proposed by the respondent judge excluding fundamental rights and consideration of elements essential to the decision of whether children are in such condition that their welfare requires they remain in the custody of the court does not meet this standard. See In Re Wright, 524 P.2d 790, 792 (Okl.1974).

It is also self-evident that the failure to schedule a hearing for almost two months after depriving the parents of the custody of their children is an impediment to the continuance of the parent-child relationship and a denial of due process.

The United States Supreme Court stated in Stanley v. Illinois, 405 U.S. 645, 657, 92 S.Ct. 1208, 1215, 31 L.Ed. 551, 562 (1972):

"Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand."

The statutes 10 O.S.1971, §§ 1104(b), 1105, provide that if it appears that the child is in such condition or surroundings that his welfare requires his custody be immediately assumed by the court, the Judge may order by endorsement on the summons that the officer serving it shall take the children into custody at once.

The time of the hearing is determined by 10 O.S.1971, § 1105. Under its provisions the court may not hold a hearing in less than forty-eight hours without the consent of the parents if the parent is served in the state, until at least 5 days if served out of the state, and until at least 10 days if served by publication. The purpose of the statute is obviously to afford the parent time to prepare for the hearing and to prevent a hearing that does not comport with due process. However, implicit in this statute is the inference that the hearing will be conducted timely.

The statement by the court that it does not have the time to conduct these hearings is no excuse. Perhaps it may be necessary for those in charge of assignment of Judges to make provision for additional help. It may be that this is a situation in which there needs to be a reassessment of priorities. The decision of an intake worker that children should summarily be forcibly removed from their homes and placed in another's custody without a hearing for two months is not compatible with our ideas of due process, or equal protection under the laws. This methodology is subject to patent abuse.

The United States Supreme Court further discussed the importance and integrity of the family unit and its protected rights under the Constitution in Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212. 31 L.Ed.2d 551, 558, 559 (1972).

"The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 [1045, 29 A.L.R. 1446] (1923), 'basic civil rights of man,' Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 [1660] (1942), and '[r]ights far more precious . . . than property rights,' May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 [1226] (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function

and freedom include preparation for obligations the state can neither supply nor hinder.' Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 [652] (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, Meyer v. Nebraska, supra, 262 U.S. at 399, 43 S.Ct. [625] at 626 [67 L.Ed. at 1045], the Equal Protection Clause of the Fourteenth Amendment, Skinner v. Oklahoma, supra, 316 U.S., at 541, 62 S.Ct. [1110], at 1113 [86 L.Ed. at 16601], and the Ninth Amendment, Griswold v. Connecticut, 381 U.S. 479, 496, 85 S.Ct. 1678, 14 L.Ed.2d 510 [522] (1965) (Goldberg, J., concurring)."

Original jurisdiction is assumed. Writ of Mandamus granted. The Juvenile Court is directed to hold an evidentiary hearing consistent with due process to test the allegations of the application for temporary custody on or before Friday, April 11, 1975.

WILLIAMS, C. J., and DAVISON, IRWIN, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.