2014 OK CIV APP 71

**STATE of Oklahoma, Plaintiff/Appellant,**

v.

**Ronald E. SHOEMAKER,
Defendant/Appellee.**

No. 112063.

Court of Civil Appeals of Oklahoma,
Division No. 1.

July 11, 2014.

Amy E. Wilson, Elizabeth S. Wilson, State of Oklahoma, Department of Human Services, Child Support Services, Tulsa, Oklahoma, for Appellant.

LARRY JOPLIN, Presiding Judge.

¶1 Plaintiff/Appellant State of Oklahoma (State) seeks review of the trial court's order modifying State's administrative determination of paternity of Defendant/Appellee Ronald E. Shoemaker (Defendant), and directing State to refund child support previously paid by Defendant. In this appeal, State asserts the trial court erred as a matter of law.

¶2 The mother of J.A.R. applied to State for services, and alleged Defendant was the natural father of J.A.R. State set the matter for an administrative hearing, and mailed notice to the address believed to be Defendant's.

¶3 Defendant failed to appear at the administrative hearing. By order filed September 5, 2012, Defendant was accordingly determined to be the natural father of J.A.R. by default, and ordered to pay child support. The administrative order was docketed in the trial court on September 13, 2012, and over the next months, over $2,800.00 of Defendant's wages and tax refunds were intercepted for the support of J.A.R.

¶4 State subsequently filed an application to cite Defendant for contempt on his alleged failure to obtain health insurance coverage for J.A.R. At a hearing April 11, 2013, Defendant appeared pro se, denied receipt of any previous notices, and denied he was the natural father of J.A.R. Mother and Defendant agreed to a determination of paternity by DNA testing, which the trial court ordered, and hearing was continued to July 11, 2013. The results of DNA testing, procured in May 2013, showed Defendant was not the natural father of J.A.R.

¶5 On July 11, 2013, Defendant again appeared pro se for the continued hearing. Based upon the results of DNA testing and mother's apparent failure to reveal possible fathers of J.A.R. other than Defendant, the trial court "modified" the default administrative determination of paternity:

1. Pursuant to 56 O.S. 238.3a and 56 O.S. 238.6B, the District Court has the authority to modify and/or enforce any administrative orders docketed with the district court.

2. It is proven through genetic testing that Defendant Ronald E. Shoemaker is not the biological father of [J.A.R.], and should not be required to pay child support for [J.A.R.], after May 29, 2013, and all income assignments in that regard should end immediately.

3. The mother, . . ., failed to disclose all possible fathers of [J.A.R.].

4. Both [Defendant] and [the mother of J.A.R.] agreed to the genetic testing ordered by the District Court.

5. It is equitable that [Defendant] be repaid all support monies he paid.

6. The policies of the Oklahoma Child Support Services establishes that the OCSS shall reimburse support monies ordered to be repaid.

IT IS THEREFORE ORDERED as follows:

1. The Default Order Determining Parentage And Child Support Obligation filed in this case September 13, 2012, is modified to find that the Defendant, Ronald E. Shoemaker, is not the father of [J.A.R.], and

2. ... Defendant, Ronald E. Shoemaker, shall not be required to pay child support for [J.A.R.], and all income assignments in that regard should end immediately.

3. [Oklahoma Child Support Services] shall reimburse the Defendant Ronald E. Shoemaker the sum of $2,803.95 within 30 days of the date hereof, said sum representing monies from the Defendant, Ronald E. Shoemaker, delivered to [Oklahoma Child Support Services] for said child.

State appeals.

¶ 6 We first note the instant matter stands submitted on State's brief only. Generally, where no answer brief is filed, and the omission is unexcused, the appellate courts are under no duty to search the record for some theory to sustain the trial court's judgment, and on appeal, where the brief in chief is reasonably supportive of the allegations of error, will ordinarily reverse the judgment and remand for further proceedings. *See, e.g., Sneed v. Sneed,* 1978 OK 138, 585 P.2d 1363; *Harvey v. Hall,* 1970 OK 92, 471 P.2d 911. However, it is equally well-settled that reversal is not automatic for failure to file an answer brief. *See, e.g., Hamid v. Sew Original,* 1982 OK 46, 645 P.2d 496.

¶ 7 In its first proposition, State asserts that its administrative order could only be modified or vacated according to Oklahoma law, but that Defendant filed no Petition to Vacate in the instant proceeding. So, says State, absent the filing of a Petition to Vacate by Defendant, the trial court lacked the authority to modify the administrative determination of paternity entered by default. In its second proposition, State asserts the trial court erred as a matter of law in modifying, but not vacating, the default administrative order.

¶ 8 An "administrative order shall be enforced by the district court in the same manner as an order of the district court." 56 O.S. § 238.3a. As elsewhere stated, "[a]ll docketed administrative orders shall be modified and enforced in the same manner as an order of the district court." 56 O.S. § 238.6b(I). "If genetic testing [under this] section excludes a person from being a natural parent, the Department shall dismiss any pending court or administrative collection proceedings against the person." 56 O.S. § 238.6b(G).

¶ 9 In the present case, Defendant denied receipt of the notice of administrative hearing to determine paternity. The signature on the mail receipt for the notice is undecipherable. If Defendant was to be believed, the instant proceedings constituted his first opportunity to deny paternity. The DNA testing agreed to by the Defendant and mother of J.A.R., and ordered by the trial court, demonstrated Defendant was not the natural father of J.A.R. Under these circumstances, and considering (1) mother's apparent lack of candor concerning the possible father of J.A.R., as well as (2) the provision of § 238.6b(G) requiring State's dismissal of any pending court proceedings upon receipt of the results of DNA testing showing Defendant was not the natural father of J.A.R., we find no error of law or excess of authority by the trial court in modifying the administrative order of paternity entered upon Defendant's default.

¶ 10 Further, the trial court is authorized by 56 O.S. § 238.6b(I) to modify administrative orders. Whether characterized as a modification of the default administrative order, or a vacation of the default administrative order, the trial court's judgment determines Defendant is not the natural father of J.A.R., and vacates the administrative child support obligations imposed on Defendant by default. The effect of the trial court's judgment renders the default administrative order without force as to Defendant. We reject State's second proposition of error.

¶ 11 In its third proposition, State asserts there is no mechanism for the refund

of Defendant's child support payments which have already been paid to J.A.R.'s mother, or otherwise disbursed. Indeed, says State, its division of Child Support Services "is not responsible for creating or recovering overpayments for ... time periods when [Child Support Services] collected under a court order that was later vacated." O.A.C. 340:25–5–305(d)(1). This provision could not be clearer. State is not responsible for recovering payments of child support collected or paid under a later-vacated court order.

¶ 12 That part of the order of the trial court vacating the administrative determination of paternity is AFFIRMED. That part of the order of the trial court directing State's restitution of child support paid to mother is REVERSED.

HETHERINGTON, V.C.J., and BUETTNER, J., concur.