COOK v. MCGRAW DAVISSON STEWART



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:COOK v. MCGRAW DAVISSON STEWART

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 COOK v. MCGRAW DAVISSON STEWART
2021 OK CIV APP 32
496 P.3d 1006
Case Number: 119216
Decided: 04/05/2021
Mandate Issued: 07/21/2021
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2021 OK CIV APP 32, 496 P.3d 1006

 

WARREN COOK, Plaintiff/Appellant,
v.
MCGRAW DAVISSON STEWART, LLC, an Oklahoma limited liability company, and JEAN LEWIS, an individual, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE WILLIAM D. LAFORTUNE, TRIAL JUDGE

AFFIRMED

Jean Walpole Coulter, WALPOLE COULTER & ASSOCIATES, INC., Tulsa, Oklahoma, for Plaintiff/Appellant

Gentner F. Drummond, Gary M. Gaskins, II, Logan L. James, DRUMMOND LAW, PLLC, Tulsa, Oklahoma, for Defendants/Appellees McGraw Davisson Stewart, LLC and Jean Lewis

STACIE L. HIXON, PRESIDING JUDGE:

¶1 Warren Cook appeals summary judgment granted in favor of McGraw Davisson Stewart, LLC ("McGraw") and Jean Lewis (Lewis, or collectively "Defendants"), on his negligence claim, and denial of Cook's Combined Motion to Reconsider and Vacate Order, which we treat as a Motion for New Trial.[1] The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2019, ch.15, app.1, without further briefing.

¶2 Cook received an email purporting to be from his real estate broker, Lewis, with directions for a wire transfer of funds to close on a purchase of property. Cook complied and fraudsters allegedly absconded with his funds. Cook alleged Lewis' account was hacked, that Defendants failed to maintain proper security on McGraw's email, and sued for damages.[2] The trial court granted summary judgment to Defendants, finding Cook failed to present competent evidence through expert testimony of the standard of care on which to base Cook's negligence claim, and entered judgment on August 21, 2020. Thereafter, the trial court denied Cook's Motion to Reconsider.

¶3 On review of the facts and the applicable law, we affirm the trial court's Journal Entry of Judgment of August 21, 2020 and its Order of October, 23, 2020, denying Plaintiff's Combined Motion to Reconsider and Vacate Order.

¶4 Cook appeals.

BACKGROUND

¶5 Cook retained Lewis to broker a purchase of real property in July 2016. On July 19, 2016, Cook received and complied with an email which appeared to come from Lewis' McGraw email address instructing him to wire $53,884.60 to a Bank of America account.[3] The email was not from Lewis.

¶6 Cook brought suit against the sender of the email, "John Doe," and against Lewis and McGraw on February 22, 2018 for negligence. He claimed that Defendants' email had been hacked, and that Defendants breached a duty to protect his personal and financial information, and were responsible for his loss of funds.

¶7 Defendants moved for summary judgment on February 15, 2019, arguing, among other reasons, that Cook could not establish that McGraw's email security measures were negligent. In support, Defendants presented the following material facts, which Cook did not dispute:

- Lewis' email was administered through Google/Gmail, password protected with a two-step verification process;[4]

 

- Cook did no investigation to confirm whether Defendants' email system was hacked, or his own;

- Cook has no specialized knowledge, education or training related to computer, internet and/or email security systems; and did not retain an expert to evaluate the source of the hacking or whether Defendants' security measures in July 2016 met industry standards;

- Cook did not know whether the hacking incident could have been prevented if Defendants had employed a different email system or whether the Google mail system met industry standards for security in July 2016;

- The hacking incident in July 2016 was the first hacking incident involving a real estate transaction with McGraw; and McGraw and Lewis had not heard of such hacking incidents pertaining to real estate companies in the Tulsa area prior to July 19, 2016.

- Cook had no evidence that Defendants were aware of any deficiency in their security system as of July 2016, or should have been aware of such deficiency at that time.

¶6 Cook's response to Defendants' Motion for Summary Judgment proposed additional "undisputed facts," raising irrelevant issues of Defendants' insurance coverage and subsequent remedial measures, and attempted to establish a lack of training or knowledge of a McGraw email administrator concerning email security.[5] Cook provided no evidence that Lewis' email account had been hacked. His response, and subsequent arguments in the case, relied on an article from the National Association of Realtors (NAR) dated December 15, 2015, warning the reader to be on high alert for email and online fraudsters attempting to dupe parties into wire transfers. Though it was undisputed that Lewis had not seen the article, Cook argued it was evidence that an email hack was foreseeable and precluded summary judgment. The article was the subject of a motion to strike and various evidentiary motions not on appeal.

¶7 The trial court initially denied Defendants' Motion for Summary Judgment on June 27, 2019, its minute order noting "a close case." On October 25, 2019, Defendants moved the court to reconsider, arguing, among other things, that Cook produced no evidence on summary judgment that its email security measures were deficient. Before the trial court ruled, the case was reassigned to Judge LaFortune. At the hearing, the court took the prior Motion for Summary Judgment under advisement, and granted Cook thirty days to supplement his response. No transcript from that hearing is available. Defendants contended in briefing below that the court had been inclined to grant summary judgment, but that Cook had represented he could provide additional evidence to survive summary judgment.

¶8 Cook filed his amended response to Defendants' Motion for Summary Judgment on March 2, 2020. The response supplied no additional evidence, but added language to Cook's responses to Defendants' various proposed statements of undisputed fact to contend that the fraudster's emails "appeared to come from Lewis' email account." Cook provided no evidence demonstrating or suggesting that Lewis' email account or computer system had been breached, or that his personal information had been obtained through Lewis' email or computer system. He did not supply evidence to demonstrate that Defendants' email security was inadequate or fell below industry standard.

¶9 On July 31, 2020, the trial court granted Defendants' Motion for Summary Judgment, finding that Cook was required to establish the standard of care for a professional in Defendants' position through expert testimony. A Journal Entry of Judgment in Defendants' favor followed on August 21, 2020. On September 2, 2020, Cook filed his Combined Motion to Reconsider and Vacate the Order Entered Herein, which the Court denied.

¶10 Cook appeals.

STANDARD OF REVIEW

¶11 Review of a court's ruling on summary judgment is a purely legal issue, and is reviewed de novo, considering the evidence and inferences to be drawn therefrom in the light most favorable to the non-moving party. See Smith v. City of Stillwater, 2014 OK 42, ¶ 21, 328 P.2d 1192. "A trial court's denial of motion for new trial is reviewed for abuse of discretion." Reeds, 2006 OK 43, at ¶ 9. "Where, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our de novo review of the summary adjudication's correctness." Id. The trial court's discretion is abused when it errs with respect to a "pure, unmixed question of law." Id.

ANALYSIS

¶12 Cook's eight propositions of error may be summarized as contending that the trial court erred by reconsidering its earlier denial of summary judgment, and arguing the trial court erred as a matter of law in granting summary judgment, for the specific reasons addressed below.

A. The trial court's reconsideration of an interlocutory order denying summary judgment. 

¶13 Cook contends that Defendant's Motion to Reconsider the initial denial of its Motion for Summary Judgment was properly characterized as a motion for new trial, filed more than ten days after the initial ruling, and could not be considered. As was noted in the court's Order granting summary judgment, the denial of summary judgment is interlocutory and may be revisited and/or modified by the trial court at any time prior to judgment. See LCR, Inc. v. Linwood Properties, 1996 OK 73, ¶ 9, n.10, 918 P.2d 1388. Myers v. Missouri Pac. R. C., 2002 OK 60, ¶ 39, n.72, 52 P.3d 1014. Cook's proposition of error is without merit.

B. The trial court's grant of summary judgment. 

¶14 Cook asserts the trial court erred by determining expert testimony was required to establish the standard of care necessary to consider Defendants' alleged breach of duty in his case. Cook also raises additional propositions of error which, read together, seem to contend the trial court erred in granting summary judgment in light of evidence presented by Cook, particularly the NAR article he contends demonstrated his injury was foreseeable and gave rise to Defendants' duty to protect his personal information.

¶15 First, the trial court's ruling was not based on the foreseeability of the injury and whether it supported a duty, regardless of whether it considered the NAR article, cyber security breaches in other jurisdictions, or any other evidence Cook contends the trial court should have considered for this purpose. Even if we assume Cook's injury was foreseeable and gave rise to a duty to protect him from this type of harm, Cook's claims fail because he did not present evidence sufficient to demonstrate a question of fact on other necessary elements of a negligence claim.

¶16 Cook's negligence claim required 1) a duty owed by Defendants to Cook to protect him from injury; 2) failure to perform that duty; and 3) injuries to Cook proximately caused by Defendants' failure to meet their duty of care. Smith, 2014 OK 42, at ¶ 22. Cook admitted on summary judgment that he could not present evidence that Lewis' email had been hacked, as opposed to his own.[6] Though the trial court's decision was based on the lack of expert testimony, we are not bound by the trial court's reasoning and may affirm on a different legal rationale. Hall v. Geico Group, Inc., 2014 OK 22, ¶ 17, 324 P.3d 399. Taking all evidence and inferences in the light most favorable to Cook, the evidence does not, by itself, give rise to a reasonable inference that Lewis' email was hacked, or that Defendants breached their duty of care. Rather, a breach of Lewis' email security is a possibility, among others. Cook was obligated to present evidence to dispute the material facts presented by Defendants that would otherwise entitle them to judgment as a matter of law. He did not do so, and summary judgment was proper for this reason alone.[7]

¶17 Alternatively, summary judgment was proper for the lack of expert testimony cited by the trial court. Cook cannot establish a breach of duty merely by demonstrating the email was hacked. His claim depended upon showing that Defendants failed to do what a reasonably careful person would do under the circumstances to protect client information or its email system. See generally Fargo v. Hays-Kuehn, 2015 OK 56, ¶ 13, 352 P.3d 1223; see also Oklahoma Uniform Jury Instruction 9.2 (Rev. 2014). If that standard of care, and whether its breach caused injury, is not within the common knowledge of the lay juror, it is ordinarily established by expert testimony. Johnson v. Hillcrest Health Ctr., Inc., 2003 OK 16, ¶ 13, 70 P.3d 811.[8]

¶18 Cook's claim relied on demonstrating that Defendants' computer security measures fell below those which a reasonably prudent person arguably transmitting financial or other sensitive data would adopt in Defendants' position.[9] The average juror is unlikely to be familiar with industry standards or recommendations for email security that one in Defendants' position could reasonably be expected to adopt, or whether Defendants' email system met those standards. While Cook might speculate on what measures Defendants could have adopted, speculation is insufficient to raise a jury question on standard of care. Expert testimony was necessary to establish what measures a reasonably careful person in Defendants' position would take, as well as whether this alleged failure caused Cook's injury. Cook failed to present evidence necessary to raise a question of fact on this issue.

¶19 Finally, we note Cook's argument that the trial court's determination that expert testimony was required violated Article II, Section 6 of the Oklahoma Constitution by limiting access to the court system, citing Zeier v. Zimmer, 2006 OK 98, 152 P.3d 861, Wall v. Marouk, 2013 OK 36, 302 P.2d 775, and John v. Saint Francis Hospital, 2017 OK 81, 405 P.3d 681. These cases address the requirement of an affidavit of merit to file a case. They do not apply to, or negate, the long-standing requirement that issues outside of the common experience of a lay juror be supported by expert testimony at the time of trial, or as here, on summary judgment. The trial court did not err by granting summary judgment to Defendants, and thus did not abuse its discretion in denying Cook's post-trial motion.

CONCLUSION

¶20 For the foregoing reasons, we find the trial court did not err by granting summary judgment to Defendants on Cook's negligence claim, or abuse its discretion by denying his subsequent Combined Motion to Reconsider and Vacate Order. Cook failed to demonstrate a question of fact on the issue of whether Defendants' email was hacked by fraudsters, and his personal information obtained therefrom, as well as whether Defendants' security measures, or alleged lack thereof, fell below the standard of care of a reasonably careful person or entity in their position, and caused his injury. Therefore, we affirm the trial court's Journal Entry of Judgment of August 21, 2020, and Order of October 23, 2020, denying Cook's Combined Motion to Reconsider.

¶21 AFFIRMED.

FISCHER, V.C.J., and RAPP, J., concur.

FOOTNOTES

[1] Cook's Motion to Reconsider and Vacate Order Entered Herein on July 31, 2020 was filed within ten days after the trial court's Journal Entry of Judgment granting summary judgment to Lewis and McGraw, and seeks reexamination of issues of fact and law following summary judgment. Therefore, as the substance and content of the filing dictates, we treat Cook's post-trial motion as a motion for new trial. Ginn v. Knight, 1924 OK 806, ¶ 4, 232 P. 936; Reeds v. Walker, 2006 OK 43, ¶ 4, 157 P.3d 100.

[2] Cook also sued the alleged email hacker or "fraudster," John Doe, but never served or further identified that individual. Prior to the August 21, 2020 Journal Entry of Judgment, Cook dropped John Doe from the Pretrial Conference Order, entered September 6, 2019, which the trial court held superseded Cook's Amended Petition and eliminated his claims against John Doe.

[3] The fraudulent email is not included in the record. On summary judgment, Defendants relied on allegations in Cook's Amended Petition that he received a fraudulent email that appeared to be from Lewis' account.

[4] The two-step verification process provided that, if a person attempted to log-in to an unknown computer, he was prompted to enter a verification received by text message to the account-holder's phone. He also received an email notifying that his account had been accessed from a remote location. Cook did not dispute Defendants' email employed these features, though he noted that the verification did not pop up every time an employee logged into his or her email.

[5] Cook's characterization of witness testimony on this point is not wholly supported by the materials cited. Additionally, it is not clear that the witness relied upon was the individual responsible for selecting McGraw's email system, or training others thereon. We do not address this issue further, because it is irrelevant to the Court's ruling.

[6] Defendants stated in their Motion for Summary Judgment that they did not agree that Lewis' McGraw account was hacked by fraudsters, acknowledging that neither party knew how the fraudsters managed to send the fake email, and thus did not advance an argument based on this lack of knowledge. However, the Court nevertheless affirms summary judgment on this basis. Summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." 12 O.S.2011, § 2056(C). One purpose of summary judgment is to avoid a useless trial. See Matter of Miller, 1994 OK CIV APP 58, ¶ 3, 876 P.2d 747. When a motion for summary judgment has been filed, the nonmovant must "present something which shows when the date of trial arrives, he will have some proof to support his allegations." Copeland v. Lodge Enterprises, 2000 OK 36, ¶ 9, 4 P.3d 695. Here, Cook admitted on summary judgment that he did not investigate whether Lewis' email was hacked, and thus had no evidence to support that allegation. Nothing of record suggests Cook was prevented from obtaining that evidence prior to his response. In fact, the trial court afforded him a second opportunity to supply additional evidence. Meanwhile, Cook's own testimony, attached to Defendants' Motion, stated that he had not investigated, and expected McGraw to look into the matter. McGraw did not bear the burden of proof for trial. Absent evidence that Lewis' McGraw email had been hacked, trial on Cook's negligence claim would be a waste of judicial resources.

[7] This fact is also dispositive of Cook's argument on appeal that the trial court should have allowed Cook to rely on a res ipsa loquitur theory as a basis for recovery, which he raised for the first time in his post-trial motion. Among other things, res ipsa loquitur requires that "the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer." Flick v. Crouch, 1976 OK 116, ¶ 11, 555 P.2d 1274. This theory fails in the absence of any evidence that the Defendants' email was hacked, or that the fraudsters obtained Cook's personal information from Defendants' email or computer. Additionally, a res ipsa loquitur theory in Cook's case would require expert testimony to establish certain facts, including that the injury would not have happened in the ordinary course of events had one having control of the instrumentality that likely caused the harm exercised due care. Harder v. F.C. Clinton, Inc., 1997 OK 137, ¶ 8, 948 P.2d 298.

[8] Further, "[i]f the showing of any foundation fact requires a degree of knowledge or skill not possessed by the average person, expert testimony must be adduced." Harder, 1997 OK 137, ¶14, 948 P.2d 298. A jury must have at its disposal "sufficient technical and scientific testimony . . . to answer a scientific and technical question of fact." Benson v. Tkach, 2001 OK CIV APP 100, ¶ 14, 30 P.3d 402 (citing Boxberger v. Martin, 1976 OK 78, ¶ 14, 522 P.2d 370).

[9] The alleged insufficiency of a two-step email verification process to fend off would-be hackers, in particular, is plainly a scientific or technical issue.

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1994 OK CIV APP 58, 876 P.2d 747, 65 OBJ 2172, Miller, Matter of
Discussed
 2001 OK CIV APP 100, 30 P.3d 402, 72 OBJ 2443, BENSON v. TKACH
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1956 OK 272, 302 P.2d 775, SELBY v. STATE
Cited
 2002 OK 60, 52 P.3d 1014, MYERS v. MISSOURI PACIFIC RAILROAD CO.
Discussed
 2003 OK 16, 70 P.3d 811, JOHNSON v. HILLCREST HEALTH CENTER, INC.
Discussed
 2006 OK 43, 157 P.3d 100, REEDS v. WALKER
Discussed at Length
 2006 OK 98, 152 P.3d 861, ZEIER v. ZIMMER, INC.
Discussed
 1996 OK 73, 918 P.2d 1388, 67 OBJ 2060, LCR, Inc. v. Linwood Properties
Discussed
 1924 OK 806, 232 P. 936, 106 Okla. 4, GINN v. KNIGHT
Discussed
 2013 OK 36, 302 P.3d 775, WALL v. MAROUK
Cited
 1976 OK 78, 552 P.2d 370, BOXBERGER v. MARTIN
Cited
 2014 OK 22, 324 P.3d 399, HALL v. THE GEO GROUP, INC
Discussed
 1976 OK 116, 555 P.2d 1274, FLICK v. CROUCH
Discussed
 2014 OK 42, 328 P.3d 1192, SMITH v. CITY OF STILLWATER
Discussed
 2015 OK 56, 352 P.3d 1223, FARGO v. HAYS-KUEHN
Discussed
 2017 OK 81, 405 P.3d 681, JOHN v. SAINT FRANCIS HOSPITAL
Discussed
 2000 OK 36, 4 P.3d 695, 71 OBJ 1172, Copeland v. The Lodge Enterprises, Inc.
Discussed
 1997 OK 137, 948 P.2d 298, 68 OBJ 3603, HARDER v. F.C. CLINTON, INC.
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2056, Motion for Summary Judgment
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA